[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12023
Non-Argument Calendar

_____

D.C. Docket No. 0:11-cr-60121-WPD-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LASCHELL HARRIS,
a.k.a. Shelly,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 26, 2021)

Before JORDAN, GRANT, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

Laschell Harris, a federal prisoner acting pro se, appeals the district court's denial of her 18 U.S.C. § 3582(c)(1)(A) motion for compassionate release.

Section 3582 generally deals with the imposition of sentences of imprisonment. Subsection (c) of it addresses when a district court can modify a sentence that it has imposed. It states: "The court may not modify a term of imprisonment once it has been imposed except" under certain circumstances. 18 U.S.C. § 3582(c). One of the circumstances that is within the exceptions is known as "compassionate release," which is available in relevant part "in any case" where:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction[.]

Id. § 3582(c)(1)(A)(i).

Harris submitted a request for compassionate release to the warden of her prison sometime before April 26, 2020. The record does not reveal exactly when. On May 1, 2020, the warden denied her request in a letter to Harris. The letter informed Harris: "If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by

submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response."

The record indicates that the next thing Harris did was file a motion with the district court for compassionate release under § 3582(c)(1)(A). She filed that motion on May 11, 2020. In it she argued that her medical conditions of lupus, scleroderma, hypertension, glaucoma, and past cases of bronchitis and sinus infections put her at an increased risk of contracting COVID-19. That increased risk, she said, meant the court should grant her compassionate release. Specifically, Harris requested "immediate release to home confinement."

On May 12, 2020, the day after Harris filed her motion and without any government response, the court denied the motion. It concluded that her medical conditions "do not constitute extraordinary and compelling reasons for a release to home confinement." It also found: "Moreover, having considered the factors in 18 U.S.C. § 3553(a) and U.S.S.G. [§] 1B1.13 n.1 release is not appropriate." Releasing Harris, the court concluded, "would not promote respect for the law or deter others." Harris appealed.

We have an obligation to examine our jurisdiction sua sponte. United States v. Lopez, 562 F.3d 1309, 1311 (11th Cir. 2009). That obligation is relevant here. The warden's letter denying Harris' request indicated that she had further administrative appeals to exhaust, and it is not clear whether 30 days had lapsed

before she filed her motion with the court.  Because of that, Harris may have failed to comply with § 3582(c)(1)(A)'s exhaustion requirement.  And importantly, the government has not argued to us that Harris' motion was properly denied because of any failure to exhaust administrative appeals or wait 30 days.[1]  That raises the question whether the exhaustion requirement is jurisdictional or a defense that the government can forfeit.

We have not decided whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional.  But the overwhelming weight of related Supreme Court precedent requires us to conclude that it is not.  See, e.g., Fort Bend Cnty. v. Davis, 139 S. Ct. 1843, 1849–50 (2019) (collecting cases).  The Court has "stressed the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules."  Id. at 1849.  Claim-processing rules require "that the parties take certain procedural steps at certain specified times."  Id. (quotation marks omitted).  They "may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it," but they are not jurisdictional.  Id. (alteration adopted and quotation marks omitted).  A prescription is not jurisdictional unless Congress

---

[1] The government does contend that the district court lacked jurisdiction to order home confinement.  But Harris says that she was not requesting that the court order home confinement, only "emergency compassionate release" under § 3582(c)(1)(A).  Because Harris expressly disclaims any request for home confinement and asks only for compassionate release in general, we need not address whether the district court had jurisdiction to enter an order for home confinement, even if it had thought that appropriate.  We address only compassionate release under § 3582(c)(1)(A).

4

clearly says so: "when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Id. at 1850 (alteration adopted and quotation marks omitted). And "a requirement does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions." Id. at 1851 n.8 (quotation marks omitted).

Section 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional; it "neither 'speaks in jurisdictional terms' nor 'refers in any way to the jurisdiction' of the courts." United States v. Alam, 960 F.3d 831, 833 (6th Cir. 2020) (alterations adopted) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982)). Instead, the statute "merely imposes a requirement on prisoners before they may move on their own behalf." Id. And even though § 3582(c) is, broadly speaking, a grant of jurisdiction allowing courts to modify sentences under certain conditions, cf. United States v. Mills, 613 F.3d 1070, 1078 (11th Cir. 2010), that doesn't mean the exhaustion requirement under § 3582(c)(1)(A) is jurisdictional, see Sebelius v. Auburn Regional Med. Ctr., 568 U.S. 145, 155 (2013) (rejecting a "proximity-based argument" because "[a] requirement we would otherwise classify as nonjurisdictional . . . does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions"); Gonzalez v. Thaler, 565 U.S. 134, 147 (2012) ("Mere proximity will not turn a rule that speaks in nonjurisdictional terms into a jurisdictional hurdle.").

All of this means the exhaustion requirement of § 3582(c)(1)(A) is a claim-processing rule.  And whether it is mandatory or not, the government has not argued that Harris forfeited her right to ask a court for compassionate release by failing to exhaust her administrative appeals or wait 30 days before filing her motion in court.  See Fort Bend, 139 S. Ct. at 1849 ("[A]n objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point.") (quotation marks omitted).

Satisfied that we have jurisdiction, and because the government has not asserted that Harris failed to comply with the requirements of § 3582(c)(1)(A), we address the merits of the appeal.  Because the statute speaks permissively and says that the district court "may" reduce a defendant's sentence after certain findings and considerations, the court's decision is a discretionary one that we will review only for abuse of discretion.  See United States v. Jones, 962 F.3d 1290, 1296 (11th Cir. 2020) (applying the abuse of discretion standard to "the denial of an eligible movant's request for a reduced sentence under the First Step Act"); United States v. Webb, 565 F.3d 789, 792 (11th Cir. 2009) (applying the abuse of discretion standard to a court's denial of a sentence reduction requested under 18 U.S.C. § 3582(c)(2)).  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous."  Cordoba v. DIRECTV, LLC,

6

942 F.3d 1259, 1267 (11th Cir. 2019) (quotation marks omitted).  A district court

also abuses its discretion when it commits a clear error of judgment.  United States

v. Brown, 415 F.3d 1257, 1266 (11th Cir. 2005).

When review is only for abuse of discretion, it "means that the district court

had a 'range of choice' and that we cannot reverse just because we might have

come to a different conclusion had it been our call to make."  Sloss Indus. Corp. v.

Eurisol, 488 F.3d 922, 934 (11th Cir. 2007); see also Rasbury v. I.R.S. (In re

Rasbury), 24 F.3d 159, 168 (11th Cir. 1994) ("By definition, however, under the

abuse of discretion standard of review there will be occasions in which we affirm

the district court even though we would have gone the other way had it been our

call.  That is how an abuse of discretion standard differs from a de novo standard

of review.").

The district court was permitted to reduce Harris' sentence if it found,

among other things, that "extraordinary and compelling reasons warrant" it.  18

U.S.C. § 3582(c)(1)(A)(i).  The court concluded that Harris' medical conditions

did not.  Even accepting the premise of Harris' argument, which is that medical

conditions can rise to being "extraordinary and compelling reasons," it fails.

Harris points to CDC guidance that "[a]dults of any age with certain underlying

medical conditions are at increased risk for severe illness from the virus that causes

COVID-19."  People with Certain Medical Conditions, Centers for Disease

Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 25, 2021).  But of the conditions that Harris argued to the district court, only hypertension appears on the CDC's list of conditions, and it appears only as one that means an adult with it "<u>might be at an increased risk</u>."  <u>Id.</u>  The conditions labeled as only "might be" ones are listed there because of "limited data and information" about the condition's impact and whether it increases the risk.  <u>Id.</u>  And the CDC distinguishes those conditions from ones that mean an adult is "<u>at increased risk</u>." <u>Id.</u>

In light of that, we readily conclude that the district court did not abuse its discretion in deciding that Harris' medical conditions were not "extraordinary and compelling reasons" to grant compassionate release.  <u>See</u> <u>United States v. Elias</u>, 984 F.3d 516, 521 (6th Cir. 2021) (affirming the district court's denial of a prisoner's motion for compassionate release when the prisoner had argued that her hypertension, which she argued increased her risk of death from COVID-19, was an "extraordinary and compelling" reason for release).

The district court additionally considered the § 3553(a) factors and § 1B1.13 n.1, which further contributes to our holding that it did not abuse its discretion.

Regardless of whether the court was required to consider § 1B1.13 n.1, it did so.[2]

And its order makes clear that it independently considered whether Harris' reasons

were "extraordinary and compelling" under § 3582(c)(1)(A), and then separately

and "[m]oreover" considered and rejected her reasons in light of § 1B1.13 n.1.

    **AFFIRMED.**

---

[2] We need not and do not reach the issue of whether the district court was required to consider § 1B1.13 n.1. If the court was required to, it did. If it was not required to, it nonetheless independently considered and rejected Harris' reasons as not "extraordinary and compelling." See 18 U.S.C. § 3582(c)(1)(A); United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) ("There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)); Brooker, 976 F.3d at 234 (holding that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release" beyond anything in § 1B1.13); United States v. Gunn, 980 F.3d 1178, 1181 (7th Cir. 2020) ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); Elias, 984 F.3d at 519 ("[W]e hold that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions.").